In re BRUNO'S, INC., Debtor.

A.B. REAL ESTATE, INC.,
SNA, Inc., Plaintiffs,

v.

BRUNO'S, INC.; Kholberg Kravis Roberts & Co., L.P., a limited partnership, d/b/a KKR; KKR Associates, L.P., a limited partnership; Crimson Associates, L.P., a limited partnership; KKR Partners II, L.P., a limited partnership, Defendants.

Adversary No. 98–00064.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Oct. 21, 1998.

Robert W. Tapscott, Jr., T. Louis Coppedge, Maynard, Cooper & Gale, P.C., Birmingham, AL, for Debtor.

David B. Anderson, N. Christian Glenos, Walston, Stabler, Wells, Anderson & Baines, Birmingham, AL, for Plaintiffs.

W. Stancil Starnes, Starnes & Atchinson, Birmingham, AL, for Defendants.

### MEMORANDUM OPINION AND ORDER

TAMARA O. MITCHELL, Chief Judge.

This proceeding came before the Court on a motion for an order transferring venue filed by Brunos (hereafter "Debtor"). On

February 18, 1998, Debtor removed a cause of action pending in the Circuit Court of Jefferson County to this Court. Debtor now seeks to transfer venue of that action to the United States Bankruptcy Court for the District of Delaware, where Debtor's Chapter 11 case is pending along with several affiliated debtors whose cases are being jointly administered in *In re PWS Holding Corp., Bruno's, Inc., et al,* Case Nos. 98–212(SLR) through 98–223(SLR).[1]

Appearing at the evidentiary hearing on August 4, 1998 and on September 3, 1998 at the hearing on closing arguments were Robert W. Tapscott, Jr. and T. Louis Coppedge, counsel for the Debtor /Movant,[2] W. Stancil Starnes, counsel for the non-debtor Defendants, and David B. Anderson, N. Christian Glenos, and James A. Harris, Jr. counsel for the Plaintiffs /Claimants, SNA, Inc. (hereafter "SNA") and A.B. Real Estate, Inc. (hereafter "A.B."). This Court has considered the pleadings and briefs filed, the testimony and documentary evidence admitted, the arguments of counsel, and the law regarding the issue before the Court.

The sole issue is whether there should be a change of venue for this adversary proceeding by moving it to the Delaware court where the bankruptcy case is pending. This Court has jurisdiction of the removed cause of action pursuant to 28 U.S.C. § 1334(b), 151, and 157(a) (1994)[3] and the district court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[4] This adversary proceeding on Debtor's motion to transfer venue is a core proceeding arising in a case under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A) (1994).[5]

This Court has considered the pleadings, the testimony and documents admitted during the evidentiary hearing, the written and oral arguments of counsel, and the law. The Court has also taken judicial notice of documents filed in this adversary proceeding, pursuant to Federal Rule of Bankruptcy Procedure 9017.[6] In accordance with Federal

---

1. A discussion of the joint Chapter 11 cases follows on page 315 of this opinion.

2. Additionally, Matt Grill appeared as co-counsel for the Debtor at the September 4 hearing on oral arguments.

3. **28 U.S.C. § 1334(b)** provides:

 Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

 **28 U.S.C. § 151** provides:

 In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or by order of the district court.

 **28 U.S.C. § 157(a)** provides:

 Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district.

4. The **General Order of Reference Dated July 16, 1984, As Amended July 17, 1984** issued by the United States District Court for the Northern District of Alabama provides:

 The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

5. **28 U.S.C. § 157(b)(2)(A)** provides:

 (b)(2)Core proceedings include, but are not limited to—
 (I) matters concerning the administration of the estate.

6. **Fed.R.Bankr.P. 9017, Evidence** provides the following:

 The Federal Rules of Evidence and Rules 43, 44 and 44.1 F.R.Civ.P. apply in cases under the Code.

 **Fed.R.Evid. 201, Judicial Notice of Adjudicative Facts** provides the following:
 (a) *Scope of Rule.* This rule governs only judicial notice of adjudicative facts.
 (b) *Kinds of Facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
 (c) *When Discretionary.* A court may take judicial notice, whether requested or not.

Rule of Civil Procedure 52,[7] applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052,[8] the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

The removed cause of action arose from the following events alleged in Plaintiffs' First Amended Complaint filed in the state court action. (Claimant's Ex. 1) On May 28, 1993, Debtor and SNA executed an agreement in Jefferson County, Alabama under which SNA leased to Debtor two grocery store locations in Birmingham, Alabama and Debtor granted SNA an option to purchase fifteen new store sites within thirty-six months, the location of which were to be mutually agreed upon by the parties. If Debtor failed to offer any new sites to SNA during the thirty-six months then SNA would thereafter have the right to purchase fifteen existing store sites in the Southeast from Debtor. On May 31, 1996, SNA and Debtor executed a First Amendment to the original agreement in which Debtor agreed to immediately offer SNA the opportunity to purchase nine existing store sites—five in Alabama, and one in each of Florida, Georgia, Mississippi, and Tennessee—and Debtor had an additional two years to comply with its remaining obligations under the original contract. On May 31, 1996, SNA assigned its interest in the agreements to A.B. with Debtor's permission, and A.B. subsequently made a formal demand to purchase five of Debtor's sites. Debtor responded by letter dated May 1, 1997 that the First Amendment was void and SNA's option had expired. On June 6, 1997, SNA and A.B. (collectively "Plaintiffs")

commenced an action in the Circuit Court of Jefferson County, Alabama, Civil Action No. CV–97–03538, alleging that Debtor and the non-debtor Defendants had committed fraud, tortious interference with business relations, and breach of contract.

On February 2, 1998, PWS Holding Corporation (hereafter "PWS") and several of its affiliated corporations [9]—including Debtor— filed a Chapter 11 petition, and subsequently filed consolidated [10] schedules and statement of financial affairs in the United States Bankruptcy Court for the District of Delaware. (Movant's Ex. 1, 3) PWS is a Delaware corporation. (Movant's Ex. 3) Debtor is incorporated under Alabama law, and its corporate offices and principal officers are in Birmingham, Alabama. (Claimants' Ex. 1) Non-debtor Defendant KKR owns the majority of Debtor's outstanding stock. (Claimants' Ex. 1) The schedules for all debtors reflected total assets at book value of $615,973,151.72 and total liabilities of $979,102,654.94. (Movant's Ex. 1) A.B. was listed on Schedule G as a creditor holding unexpired leases on two of Debtor's stores. (Movant's Ex. 1)

Additionally, the cause of action Debtor seeks to transfer is one of 378 actions pending on the date the bankruptcy cases were filed. Most are pending in state courts in the Southeast involving Debtor and its affiliates. (Movant's Ex. 1) Further, there is no indication in the petition, schedules or statement of financial affairs that this state action is related to any of the other 378 actions pending against Debtor and its affiliates. Following is a table of all litigation (excluding garnishee orders) involving Debtor and its affiliates at the commencement of their Chapter 11 case as reflected in the statement of financial affairs in Movant's Exhibit 1.

7. **Fed.R.Civ.P. 52** Findings by the Court; Judgment on Partial Findings provides:
 (a) In all actions tried upon the facts without a jury...the court shall find facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58...

8. **Fed.R.Bankr.P. 7052, Findings by the Court** provides:
 Rule 52 F.R.Civ.P. applies in adversary proceedings.

9. The corporations affiliated with PWS are: Bruno's, Inc. (Debtor); Food Max of Mississippi, Inc.; A.F. Stores, Inc.; BR Air, Inc.; Food Max

of Georgia, Inc.; Food Max of Tennessee, Inc.; Food Max, Inc.; Lakeshore Foods, Inc.; Bruno's Food Stores, Inc.; Georgia Sales Company; and SSS Enterprises, Inc. (Movant's Ex. 1)

10. Although the schedules and statement of financial affairs for all debtor corporations were filed on a consolidated basis, there is no indication that the Chapter 11 cases have been substantively consolidated. Instead, it appears that these cases are being jointly administered (see Movant's Ex. 1).

| Type of Action | Number of Cases | Percent of Total | Location of Action [11] |
|---|---|---|---|
| Personal injury | 267 | 71% | State courts |
| EEOC charge | 60 | 16% | EEOC offices |
| Discrimination | 41 | 11% | 24 in state courts 17 in federal courts |
| Arbitration | 6 | 2% | Arbitration |
| **Contractual dispute** | **1** | **0%** | **This Court** |
| Breach of contract | 1 | 0% | State court |
| Condemnation | 1 | 0% | State courts |
| Tax dispute | 1 | 0% | State courts |
| Total | 378 | 100% | |

On February 18, 1998, Debtor filed a Notice of Removal of Plaintiffs' state action to this Court. Movant's Notice of Removal cited as statutory grounds for removal 28 U.S.C. § 1452(a),[12] 28 U.S.C. § 1334(b) (1994),[13] 28 U.S.C. § 1446 (1994),[14] 28 U.S.C. § 157(b)(2)(A),(B) and (O) (1994),[15] and Rule 9027(a)(2) of the Federal Rules of Bankruptcy Procedure.[16] Also on February 18, 1998,

11. The actions were pending in the following Southeastern states: Alabama, Florida, Georgia, Mississippi, South Carolina, and Tennessee. The seventeen pending discrimination actions were filed in the federal district courts in the following states: Alabama, Florida, Georgia, Mississippi, and Tennessee.

12. **28 U.S.C. § 1452(a)** provides:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police power or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

13. **28 U.S.C. § 1334(b)** provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

14. **28 U.S.C. § 1446** provides in part:

(a) A defendant or defendants desiring to remove any civil action...from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

15. **28 U.S.C. § 157(b)(2)(A), (B), and (O)** provide:

(b)(2) Core proceedings include, but are not limited to—
(A) matters concerning administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;...
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury or wrongful death claims.

16. **Fed.R.Bankr.P. 9027(a)(2)** provides in part:

If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay...(C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

the non-debtor Defendants in the removed action [17] filed a notice of joinder with respect to Debtor's removal of this adversary proceeding and in the motion to transfer venue. On March 3, 1998, Plaintiffs filed a statement as required by Rule 9027(e)(3) of the Federal Rules of Bankruptcy Procedure.[18] The statement reflects that Plaintiffs had not filed a proof of claim in Debtor's Chapter 11 case and that the state action removed by Debtor is a non-core proceeding in Debtor's bankruptcy case.[19]

At the evidentiary hearing on August 4, 1998, Debtor and the non-debtor Defendants (collectively, "Defendants") presented four exhibits which were admitted without objection into the record, but they did not offer any testimony in support of their motion to transfer venue of the action. One witness called by Plaintiffs was Mr. James J. Hagan, an Executive Vice–President and Chief Financial Officer for Debtor. Mr. Hagan testified to the following locations of and relationship between PWS, Debtor, and three of the other affiliates that filed Chapter 11 in Delaware. PWS has been a wholly-owned subsidiary of Debtor since 1988 and filed a Chapter 11 petition in Delaware because it guaranteed a debt that Debtor negotiated in August of 1995 and on which Debtor subsequently defaulted. PWS has no offices in Delaware, where it is incorporated. PWS owns three other subsidiaries of Debtor: Bruno's Food Stores, Inc., which owns approximately twenty pieces of real estate that are sites for

Debtor's stores; Triple S Enterprises, which owns 50% of PM Associates, a joint venture with Metropolitan Life Insurance Company which owns approximately ten of Debtor's inactive store sites; Georgia Sales Company, an inactive subsidiary.

Also at the evidentiary hearing, Mr. James A. Harris, Jr. was called as a witness for the Plaintiffs. He is an attorney practicing in Birmingham and filed this action in the state court. Mr. Harris testified to the following facts about the locations and relationships between the parties to the cause of action removed to this Court. Plaintiff SNA is incorporated in Alabama and its principal place of business is in Alabama. SNA is a privately-held investment corporation owned by Mr. Alex Baker, who is a resident of Alabama. Plaintiff A.B. is incorporated in Delaware and its principal place of business is in Birmingham, Alabama. A.B. is in the business of developing and leasing shopping centers. A.B. is owned by AIG Properties, also incorporated in Delaware and with headquarters in New York. A.B.'s ultimate parent company [20] is AIG Baker. Neither SNA nor A.B. maintains an office in Delaware. Mr. Harris said that although a representative of AIG Properties has recently been added to Debtor's amended preliminary trial witness list (Movant's Ex. 4), he believes that the AIG Properties representative will not need to be a witness in the action because they did not purchase A.B. until after execution of the

**17.** The non-debtor defendants in the state action are: (1) Kholberg, Kravis Roberts & Co., L.P., d/b/a KKR, incorporated in Delaware with principal offices in New York; (2) KKR Associates, L.P., with principal offices in New York; (3) Crimson Associates, L.P., with principal offices in New York; and (4) KKR Partners II, L.P., with principal offices in New York. See Claimant's Ex. 1.

**18.** **Fed.R.Bankr.P. 9027(e)(3)** provides:

Any party who has filed a pleading in connection with the removed claim or cause of action, other than the party filing the notice of removal, shall file a statement admitting or denying any allegation in the notice of removal that upon removal of the claim or cause of action the proceeding is core or non-core. If the statement alleges that the proceeding is non-core, it shall state that the party does or does

not consent to entry of final orders or judgment by the bankruptcy judge. A statement required by this paragraph shall be signed pursuant to Rule 9011 and shall be filed not later than 10 days after the filing of the notice of removal. Any party who files a statement pursuant to this paragraph shall mail a copy to every other party to the removed claim or cause of action.

**19.** However, the statement does not reflect whether Plaintiffs consent to final orders or judgment rendered by this Court in connection with proceedings regarding the removed state action, as required by Rule 9027(e)(3).

**20.** Mr. Harris said that he could not describe the exact hierarchical structure within which A.B. fit in relation to AIG Baker. He stated that A.B. was at least two levels of ownership below AIG Baker in the AIG Baker hierarchy.

contract which forms the basis of the action. Mr. Harris further believes that non-debtor Defendant KKR (hereafter "KKR") is the ultimate parent company of all of the Defendants in the cause of action, including Debtor.

Mr. Harris also testified that the Plaintiffs have produced between 1,500 and 2,000 documents to the Defendants in response to discovery requests. Pursuant to Plaintiffs' request, KKR has produced between 5,000 and 6,000 documents which are located in Birmingham, Alabama. The documents and records yet to be produced by Debtor are located at Debtor's principal place of business in Birmingham, Alabama. Any additional documents Plaintiffs might need to produce for defendants are located in Birmingham, Alabama.

On direct examination, Mr. Harris was asked about anticipated discovery to prepare the case for trial. Mr. Harris testified that the parties have yet to depose any of their potential witnesses, and that he expects that as many as thirty-to-forty depositions may be necessary. Of the twenty-seven witnesses Plaintiffs expect to depose, twenty-two are located in Birmingham, Alabama. (Claimant's Ex. 2) Of the fourteen potential witnesses on Debtor's preliminary trial witness list, nine of them are located in Birmingham, Alabama, including a representative of First Alabama Bank which financed A.B.'s acquisition of the two store sites it currently leases to Debtor. (Movant's Ex. 4) Mr. Harris further said that while some of Plaintiffs' potential witnesses are located outside of Alabama, he does not believe any of the parties' potential witnesses are located in Delaware.[21]

Mr. Harris was also questioned about the convenience of the parties' witnesses and he stated that the expense to Plaintiffs for their witnesses would be substantially increased by having to try the action in Delaware. He estimated that, based on his experience, the trial would last from two weeks to one month. At least four of the witnesses on Plaintiffs' potential witness list, all of whom are associated with A.B., would be called to testify at trial. At least one representative of Plaintiffs would need to be present for the duration of the trial, and Mr. Harris stated that he prefers that three of the representatives be present during the trial if the court does not invoke the rule excluding witnesses from the courtroom. The cost of travel, food and lodging for Plaintiffs' representatives to appear as corporate representatives and /or as witnesses in Delaware would be completely eliminated if the action were tried in an Alabama court. Further, it would cost Plaintiffs the loss of productivity associated with the absence of these representatives while they are physically located in Delaware for trial. Only after all of Plaintiffs' potential witnesses have been deposed will Mr. Harris know whether any of Debtor's representatives need to be called as live witnesses for Plaintiffs.

Further, the Plaintiffs' litigation cost would be substantially higher in Delaware because of that court's rule requiring representation by local counsel. Mr. Harris said the cost of local counsel would be at an hourly rate, without any contingency basis, and that it would involve a substantial number of hours to educate local counsel on the cause of action and the evidence gathered thus far. Additionally, Plaintiffs' expenses for Mr. Harris as counsel would rise substantially by the cost of travel, lodging, and food for himself and the staff he would need while in Delaware.

Mr. Harris also testified that discovery in the cause of action had been ongoing since it was filed by Plaintiffs some eight months prepetition. He stated that in addition to the production of voluminous documents by all parties, Plaintiffs had propounded four or five sets of interrogatories on Defendants. However, a date for trial had not been set at the time Debtor filed Chapter 11. Mr. Harris estimated that the value of this action, based upon his experience and knowledge of

---

21. Further, on August 21, 1998, Debtor and the non-debtor Defendants filed a joint memorandum of law in which they stated: "Both Bruno's (Debtor) and Crimson Associates ( a non-debtor defendant) have agreed to produce any employee who would be subject to the subpoena power of the court in Jefferson County." See Defendant's Joint Memorandum of Law in Further Support of Bruno's Motion to Transfer, page 13.

Alabama law, is in excess of one million dollars.

Additionally, in briefs submitted after the evidentiary hearing, Plaintiffs represented that upon successful liquidation of their action in an Alabama court, they would either file a proof of claim in Debtor's Chapter 11 case for the damages award or seek to enforce the judgment with respect to KKR. (Pl.'s Sec. Mem. Op. at 15). Defendants asserted that Plaintiffs' claim for tortious interference against Debtor's parent corporation, KKR, is an alter ego claim which must be asserted against the Debtor, and that Debtor has indemnified Crimson Associates, a non-debtor Defendant, concerning any liability arising out of this action. (Def.'s Jt. Reply at 9–10) Finally, at the hearing on closing arguments, Debtor's counsel represented that the Defendants agreed with the Plaintiffs that the cause of action is governed by Alabama law.

## II. CONCLUSIONS OF LAW

### (A) Removal of the State Action

■ Section 1446(a) of Title 28 of the United States Code [22] requires that any defendant in a civil proceeding pending in state court seeking removal of that action to federal district court must file a notice of removal with the district court within which the action is pending that reflects a short and plain statement of the grounds for removal. The grounds supporting removal are found in 28 U.S.C. § 1452(a),[23] which provides that a civil action related to a bankruptcy case commenced by a party other than by a unit of the government or commenced in a court other than the United States Tax Court may be removed to the district court where the action is pending if that district court has jurisdiction over the action. Rule 9027(a)(2) of the Federal Rules of Bankruptcy Procedure [24] requires that the notice of removal must be filed within ninety days after commencement of a bankruptcy case where the state action was initiated prior to the bankruptcy. Plaintiffs initiated this action against Debtor and the non-Debtor Defendants on June 6, 1997 in the Circuit Court of Jefferson County, Alabama. On February 2, 1998, Debtor filed a Chapter 11 petition with the United States Bankruptcy Court for the District of Delaware, which was assigned to the Hon. Sue L. Robinson, United States District Judge. Debtor filed a Notice of Removal of the state action with this Court on February 28, 1998, which was the twenty-sixth day after Debtor filed its Chapter 11 petition. Plaintiffs did not allege any procedural defect in the Debtor's notice of removal or the timeliness in which it was filed. Further, at the hearing on September 3, 1998, counsel for Plaintiffs acknowledged that they did not challenge Debtor's removal procedure or the timeliness thereof. Therefore, this cause of action was properly and timely removed to this Court.

### (B) Jurisdiction of the Removed Proceeding

■ "Jurisdiction" is defined as "the power of the court to decide a matter in controversy and presupposes the existence of a duly constituted court with control over the

---

22. **28 U.S.C. § 1446** provides in part:
(a) A defendant or defendants desiring to remove any civil action...from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

23. **28 U.S.C. § 1452(a)** provides:
A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police power or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

24. **Fed.R.Bankr.P. 9027(a)(2)** provides in part:
If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay...(C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

subject matter and the parties." *Black's Law Dictionary* 853 (6th ed.1990) (citation omitted). Practically speaking, it is the authority of a court to adjudicate the legal dispute before it. Bankruptcy courts derive their jurisdiction by a conjunctive reading of three federal statues enacted by Congress as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984: 28 U.S.C. §§ 1334, 151 and 157 (1994).[25]

Subsections (a) and (b) of § 1334 respectively vest original jurisdiction over bankruptcy cases and proceedings in federal district courts. Because bankruptcy cases and proceedings are concerned with adjudicating interests of various parties in property of the debtor's estate, the type of jurisdiction relevant in bankruptcy adjudication is subject matter jurisdiction over all of the debtor's interests in property, rather than personal jurisdiction over the debtor and other parties holding interests in this property.[26] The vesting of original subject matter jurisdiction in the district courts is, however, modified by the plain language of 28 U.S.C. §§ 151 and 157. Section 151[27] designates that the bankruptcy judges in each federal district constitute a unit of the district court and that each bankruptcy judge has authority to preside

over "any action, suit or proceeding" as defined in §§ 151—158. Further, § 157(a)[28] provides that each district court may refer by order any or all bankruptcy cases and proceedings to the bankruptcy judges for the district. Pursuant to § 157(a), the United States District Court for the Northern District of Alabama issued an amended General Order of Reference[29] which automatically refers all cases and proceedings in cases under the Code to the bankruptcy court. Thus, in the Northern District of Alabama, all bankruptcy cases and proceedings should be filed directly with the bankruptcy court.[30] *Accord St. Vincent's Hospital v. Norrell (In re Norrell )*, 198 B.R. 987, 992 fn. 3 (Bankr.N.D.Ala. 1996) (citing *Lone Star Industries, Inc. v. Liberty Mutual Ins.*, 131 B.R. 269, 272 (D.Del.1991)).

In response to Debtor's Notice of Removal, Plaintiffs filed a Statement Under Bankruptcy Rule 9027(e)(3), in which they did not challenge this Court's jurisdiction over the removed state action. Further, Plaintiffs apparently found no legitimate reason and therefore did not allege or attempt to prove during trial any grounds for this Court's lack of jurisdiction over the removed state ac-

25. *See* Lawrence P. King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 Vand. L.Rev. 675 (1985); *Burlingame v. Whilden, (In re Whilden )*, 67 B.R. 40, 41–42 (Bankr. M.D.Fla.1986); *In re Oceanquest Feeder Service, Inc.*, 56 B.R. 715, 718–719 (Bankr.D.Conn.1986); *Windsor Communications Group v. Five Towns Stationery, Inc. (In re Windsor Communications Group )*, 53 B.R. 293, 296 (Bankr.E.D.Pa.1985).

26. Jurisdiction over bankruptcy issues is provided by **28 U.S.C. § 1334(e):**

 The district court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of commencement of such case, and of the property of the estate.

27. **28 U.S.C. § 151** provides:

 In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court,

except as otherwise provided by law or by rule or by order of the district court.

28. **28 U.S.C. § 157(a)** provides:

 Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district.

29. The **General Order of Reference Dated July 16, 1984, As Amended July 17, 1984** issued by the United States District Court for the Northern District of Alabama provides:

 The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

30. However, where the district court has not issued an order of reference pursuant to 28 U.S.C. § 157(a), then all notices of removal should be filed with the district court. *See In re HME Records, Inc.*, 62 B.R. 611 (Bankr. M.D.Tenn.1986); *Moody v. Empire Life Ins. Co. (In re Moody )*, 46 B.R. 231 (D.M.D.N.C.1985); *Armstrong v. Rainier Financial Serv., Inc. (In re Greiner )*, 45 B.R. 715 (Bankr.N.D.1985).

tion.[31] In summary, pursuant to a plain reading of 28 U.S.C. §§ 1334, 151, and 157 in conjunction with the district court's amended General Order of Reference, this Court has jurisdiction over the removed cause of action, which is now an adversary proceeding in bankruptcy.

### (C) Proper Venue for the Adversary Proceeding

■ There are numerous federal statutes concerning proper venue. "Venue" is defined as "[t]he particular county or geographical area, in which a court with jurisdiction may hear and determine a case." *Black's Law Dictionary* 1557 (6th ed.1990). Initially, a distinction must be drawn between a bankruptcy "case" and a "proceeding" before determining the applicable statute and proper venue.

The Bankruptcy Code provides that a "case" is commenced upon the filing of a petition under one of the chapters of the Bankruptcy Code and has the immediate effect of granting broad relief from all collection activity by creditors.[32] One recognized authority on bankruptcy defines the bankruptcy "case" as "the umbrella under which all of the proceedings which follow the filing of a bankruptcy petition take place." 1 *Collier on Bankruptcy* ¶ 3.01[3] (Matthew Bender 15th ed. rev.1996).

In contrast, a "proceeding" in bankruptcy "refers to a litigated matter arising within a case during[33] the course of administration of an estate." 2 *Collier on Bankruptcy* ¶ 301.03 (Matthew Bender 15th ed.1994) (quoting the Advisory Committee Note to former Bankruptcy Rule 101); *Blevins Electric, Inc. v. First American Nat'l Bank (In re Blevins )*, 185 B.R. 250, 254 (Bankr.E.D.Tenn.1995) (quoting same). Proceedings in bankruptcy are further divided into 1) civil proceedings arising under the Bankruptcy Code or 2) civil proceedings arising in or 3) related to a bankruptcy case initiated under the Bankruptcy Code. 28 U.S.C. § 157(a).[34] Of the three types of civil proceedings mentioned, it is noted that the one with the least connection to the bankruptcy case is a civil proceeding that is merely "related to" the case. *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir.1990).

■ A civil proceeding is "at least related to" the bankruptcy case where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood )*, 825 F.2d 90, 93 (5th Cir.1987) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984), and citing as additional authority *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir.1987); *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986)). The Eleventh Circuit elaborated on this definition: "An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively), and which in any way impacts upon the handling and administration of the bankruptcy estate." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir.1990). Thus, under the Eleventh Circuit's broad interpretation of "related to," a civil proceed-

---

**31.** At the hearing on September 3, 1998, counsel for Plaintiffs acknowledged that they did not challenge Debtor's removal of the cause of action on any grounds, including lack of jurisdiction.

**32.** 11 U.S.C. § 301 (1994) provides:

A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

*See also* 11 U.S.C. § 362(a) (1994) ("a petition filed under section 301, 302, or 303 of this title ...operates as a stay, applicable to all entities, of—(1) the commencement or continuation ...of

a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title...")

**33.** Under some circumstances, an adversary proceeding in bankruptcy may occur after the administration of the estate. *See Fidelity & Deposit Co. of Maryland v. Morris (In re Morris )*, 950 F.2d 1531 (11th Cir.1992)

**34.** 28 U.S.C. § 157(a) provides:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district.

ing against a debtor to recover damages under breach of contract and/or tort theories which "could alter the debtor's rights, liabilities, options, or freedom of action" with respect to subsequent adjudication in bankruptcy of the debtor's interest in property is a related to proceeding. Further, the court in *In re Norrell* notes that examples of related to proceedings include "proceedings that could have been brought in the district or state court absent bankruptcy, causes of action that became property of the estate and suits between parties that affect the estates." *St. Vincent's Hospital v. Norrell (In re Norrell )*, 198 B.R. 987, 993 (Bankr.N.D.Ala.1996) (citing *Case Management Manual for United States Bankruptcy Judges*, Federal Judicial Center, 1995).

■ Based on the broad scope for proceedings which are "related to" bankruptcy as defined by the Eleventh and Fifth Circuit Courts of Appeal and by the Federal Judicial Center's manual for bankruptcy judges, the removed state action is, at the very least, a proceeding related to the Debtor's bankruptcy case pending in Delaware because the outcome of the cause of action could alter the Debtor's rights, liabilities, options, and freedom of action with respect to property of the Debtor's bankruptcy estate. *Accord Thomasson v. AmSouth Bank, N.A.,* 59 B.R. 997, 1004–1005 (N.D.Ala.1986) (holding that a complaint brought in Alabama state court by plaintiffs against debtor and other non-debtor defendants, alleging fraud and misrepresentation with respect to letters of credit, is

"at least related to the debtor's bankruptcy case pending in Houston, Texas").

■■ Proper venue for federal bankruptcy cases is governed by 28 U.S.C. § 1408 (1994). That statute provides that a bankruptcy case may be filed in the district court[35] within which the debtor's domicile, residence, principal place of business, or principal assets have been located for at least the greater portion of the preceding 180 days. More importantly for the matter before this Court, proper venue of proceedings in bankruptcy is governed by 28 U.S.C. § 1409 (1994). This statute provides that proceedings in bankruptcy may be filed (but are not required to be filed) in the district court in which the case is pending. Further, Plaintiffs apparently found no legitimate reason and therefore did not allege prior to or during trial, and did not present any evidence during trial that venue of this cause of action is improper in this district. Therefore, the cause of action is a proceeding in bankruptcy and venue of the proceeding is proper in this Court.[36] The issue remains whether a transfer to another venue is appropriate.

### (D) Transfer of Venue Statutes

■ Most of the published decisions regarding transfer of venue for a bankruptcy proceeding cite two different statutes for such authority. Some courts have determined that the general change of venue statute for civil actions pending in district courts, 28 U.S.C. § 1404(a), applies to a request for transfer of a bankruptcy proceeding that is "related to" the bankruptcy case.[37] They

**35.** As discussed *supra,* pursuant to 28 U.S.C. §§ 151 and 157(a), the district may issue an order referring all bankruptcy cases and proceedings to the bankruptcy judges comprising that district's unit. The district court for the Northern District of Alabama has issued a general order of reference automatically referring all bankruptcy cases and proceedings to the bankruptcy court within the district. Accordingly, all cases and proceedings in bankruptcy are to be filed directly with the bankruptcy court.

**36.** Although 28 U.S.C. § 1409 provides that proceedings in bankruptcy may be filed (but are not required to be filed) in the district court in which the case is pending, Debtor could not have properly removed the cause of action directly to the United States District Court for the District of

Delaware where Debtor's Chapter 11 case is pending. The plain language of the statute governing removal procedures, 28 U.S.C. § 1446(a), and Rule 9027(a)(2) of the Federal Rules of Bankruptcy Procedure allow removal only to the district court in which the state cause of action is pending. Failure to follow the procedural requirements of these statutes would have resulted in dismissal of the motion to transfer venue and remand of the action back to the circuit court of Jefferson County. *See National Developers, Inc. v. Ciba–Geigy Corp. (In re National Developers, Inc.),* 803 F.2d 616 (11th Cir.1986).

**37.** *See Searcy v. Knostman,* 155 B.R. 699, 706 (S.D.Miss.1993); *Murray v. Jersey Boats, Inc.,* 1992 WL 37516, at *3 (E.D.Pa. Feb. 21, 1992); *In re Thomson McKinnon Sec., Inc.,* 126 B.R.

reason that because 28 U.S.C. § 157(a) distinguishes between proceedings "arising under Title 11," "arising in a case under Title 11" and those "related to a case under Title 11," "related to" proceedings are not proceedings "under Title 11" and therefore are governed by the general change of venue statute, 28 U.S.C. § 1404(a).[38]

However, most courts look to 28 U.S.C. § 1412 (1994) for authority to determine the outcome of a motion to transfer venue of a cause of action removed to the bankruptcy court.[39] This Court agrees that the appropriate authority for transfer of bankruptcy proceedings is 28 U.S.C. § 1412 for two reasons. First, the plain language of § 1412 states that it applies to a change of venue concerning a case or proceeding under Title 11 (the Bankruptcy Code), while the language in § 1404(a) refers only to a "civil action" and fails to mention language peculiar to bankruptcy jurisdiction and venue

statutes, including "case," "proceeding" and "Title 11." Second, Rule 7087 of the Federal Rules of Bankruptcy Procedure which governs adversary proceedings of state actions removed to bankruptcy court pursuant to 28 U.S.C. § 1452, references 28 U.S.C. § 1412, not § 1404(a). *See In re Storage Equities, Inc.,* 91 B.R. 616, 619 (N.D.Ga.1988); 1 *Collier on Bankruptcy* ¶ 4.04[4][a] and [b] (15th ed. rev.1996).[40] Accordingly, this Court finds that 28 U.S.C. § 1412 is the applicable change of venue statute for determining whether a transfer of proceedings related to the bankruptcy case is appropriate.

### (E) Transfer of Venue Under 28 U.S.C. § 1412

### (1) Preliminary Considerations

 Section 1412 provides that a district court[41] may transfer a case or proceeding "under Title 11" to a district court for

833, 834–835 (Bkrtcy.S.D.N.Y.1991); *Goldberg Holding Corp. v. NEP Productions, Inc.,* 93 B.R. 33, 34 ( S.D.N.Y.1988); *United States for Use of Metal Trims Indus., Inc. v. Klein Const. Co.,* 1985 WL 3020 (Oct. 9, 1985).

**38.** *See Searcy v. Knostman,* 155 B.R. 699, 706 ( S.D.Miss.1993); *Murray v. Jersey Boats, Inc.,* 1992 WL 37516, at *3 (E.D.Pa. Feb. 21, 1992); *In re Thomson McKinnon Sec., Inc.,* 126 B.R. 833, 834–835 (Bkrtcy.S.D.N.Y.1991); *Goldberg Holding Corp. v. NEP Productions, Inc.,* 93 B.R. 33, 34 ( S.D.N.Y.1988); *United States ex rel Metal Trims Indus., Inc. v. Klein Constr. Co.,* 1985 WL 3020 (Oct. 9, 1985).

**39.** *Storage Equities, Inc. v. Delisle,* 91 B.R. 616 (N.D.Ga.1988); *Wittes v. Interco Inc. (In re Interco, Inc.),* 139 B.R. 718 (Bankr.E.D.Mo.1992); *Twyman v. Wedlo, Inc.,* 204 B.R. 1006 (Bankr. N.D.Ala.1996); *SBKC Service Corp. v. IIII Prospect Partners (In re· IIII Prospect Partners ),* 204 B.R. 222 (Bankr.D.Kan.1996); *In re Waits,* 70 B.R. 591 (Bankr.S.D.N.Y.1987); *In re Oceanquest Feeder Serv., Inc.,* 56 B.R. 715 (Bankr. D.Conn.1986); *Burlingame v. Whilden (In re Whilden ),* 67 B.R. 40 (Bankr.M.D.Fla.1986); *General Instrument Corp. v. Financial and Bus. Services, Inc. (In re Finley ),* 62 B.R. 361 (Bankr. N.D.Ga.1986); *McLemore v. Thomasson,* 60 B.R. 629 (Bankr.M.D.Tenn.1986). The rationale for this majority view appears to be based on the widely held view that the most important factor in determining whether to transfer a bankruptcy case or proceeding is whether the transfer would promote the economic and efficient administration of the estate. *See In re Oceanquest Feeder*

*Serv., Inc.,* 56 B.R. 715, 718 (Bankr.D.Conn. 1986) (citing *Matter of Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980)).

**40.** At the hearing on oral arguments, there was no objection from any of the parties that 28 U.S.C. § 1412 is the applicable statute for Debtor's change of venue motion. Thus, this Court does not feel that it needs further grounds for the application of § 1412. However, other grounds are discussed in *Lipshie v. AM Cable TV Indus., Inc. (In re Geauga Trenching Corp.),* 110 B.R. 638, 654 (Bankr.E.D.N.Y.1990) (holding that § 1412 is the applicable statute because a motion to change venue is a core proceeding in bankruptcy); 1 *Collier on Bankruptcy* ¶ 4.04[4][b] (15th ed. rev.1996) (noting that § 1412 is the applicable statute for change of venue regarding bankruptcy proceedings because, unlike § 1404, § 1412 does not require that the district court to which the movant seeks transfer must be a district court in which the proceeding could initially have been brought).

**41.** As discussed *supra,* pursuant to 28 U.S.C. §§ 151 and 157(a), the district may issue an order referring all bankruptcy cases and proceedings to the bankruptcy judges comprising that ·district's unit. The district court for the Northern District of Alabama has issued a general order of reference automatically referring all bankruptcy cases and proceedings to the bankruptcy court within the district. Accordingly, this Court has the authority to determine whether to transfer venue of the removed state action

**324**

another federal district, "in the interest of justice *or* for the convenience of the parties." Because the criteria under § 1412 is phrased in the disjunctive, the bankruptcy case or proceeding is transferrable upon a sufficient showing of either the interest of justice or for the convenience of the parties. *In re Toxic Control Technologies, Inc.*, 84 B.R. 140 (Bankr.N.D.Ind.1988). Transfer of venue under § 1412 requires a case-by-case analysis that is subject to broad discretion of the court.[42] The party seeking the change or transfer of venue has the burden to show that transfer is appropriate and further must do so by a preponderance of the evidence.[43]

▮▮▮ The "interest of justice" prong is "a broad and flexible standard which must be applied on a case-by-case basis." *Gulf States*

*Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1391 (2d Cir.1990). Some courts have held that the most important factor to be considered in determining whether to transfer venue of a bankruptcy proceeding under the interest of justice prong is whether transfer would promote the economic and efficient administration of the bankruptcy estate.[44] Different courts have applied different factors to determine what is in the interest of justice for resolving a change of venue request. Having considered the factors in those cases, this Court finds the following factors applicable:

(a) Economics of estate administration [45]

(b) Presumption in favor of the "home court" [46]

---

to the Delaware district court in which Debtor's Chapter 11 case is pending.

**42.** *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (motions for transfer under § 1404(a) must be made on "an 'individualized, case-by-case consideration of convenience and fairness,'" quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)); *Lipshie v. AM Cable TV Indus., Inc. (In re Geauga Trenching Corp.)*, 110 B.R. 638, 654 (Bankr.E.D.N.Y.1990); *Burlingame v. Whilden (In re Whilden )*, 67 B.R. 40, 42 (Bankr.M.D.Fla.1986).

**43.** *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1390–1391 (2d Cir.1990); *Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Co., Inc.)*, 596 F.2d 1239, 1241 (5th Cir.1979), cert. denied, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *Thomasson v. AmSouth Bank, N.A.*, 59 B.R. 997, 1000 (N.D.Ala.1986); *Twyman v. Wedlo, Inc.*, 204 B.R. 1006, 1014 (Bankr.N.D.Ala. 1996); *Continental Airlines, Inc. v. Chrysler (In re Continental Airlines, Inc.)*, 133 B.R. 585, 587 (Bankr.D.Del.1991).

**44.** *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1391 (2d Cir.1990); *Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Co., Inc.)*, 596 F.2d 1239, 1247 (5th Cir.1979), cert. denied, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *Thomasson v. AmSouth Bank, N.A.*, 59 B.R. 997, 1000 (N.D.Ala.1986) (citing *In re Butcher*, 46 B.R. 109, 112 (Bankr.N.D.Ga.1985)); *Twyman v. Wedlo*, 204 B.R. 1006, 1014 (Bankr.N.D.Ala. 1996) (citing same); *Continental Airlines, Inc. v. Chrysler (In re Continental Airlines, Inc.)*, 133 B.R. 585, 588 (Bankr.D.Del.1991).

**45.** *See Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1391 (2d Cir.1990) (citing "the efficient administration of bankruptcy estates" as a factor under the "interest of justice" prong of § 1412); *Thomasson v. AmSouth Bank, N.A.*, 59 B.R. 997, 1000 (N.D.Ala. 1986) ("The most important factor is whether the transfer of the proceeding would promote the economic and efficient administration of the estate." quoting *In re Butcher*, 46 B.R. 109, 112 (Bankr.N.D.Ga.1985); *Twyman v. Wedlo*, 204 B.R. at 1014 (quoting same)); *Continental Airlines, Inc. v. Chrysler (In re Continental Airlines, Inc.)*, 133 B.R. 585, 588 (Bankr.D.Del.1991) (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr.W.D.Pa.1990)). The majority view of courts is that the most important factor in analyzing a transfer of venue request under § 1412 is "the economic and efficient administration of the estate." *Supra* footnote 43. That factor is essentially broken down into "economics of estate administration" and "judicial efficiency" in this Court's analysis.

**46.** *Bank of America, NT & SA v. Nickele*, 1998 WL 181827, *4 (E.D.Pa.1998); *Sudbury, Inc. v. Dlott (In re Sudbury )*, 149 B.R. 489, 493 (Bankr. N.D.Ohio 1993) (citing *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc.*, 24 B.R. 141, 143 (Bankr.S.D.N.Y.1982)); *Colarusso v. Burger King Corp.*, 35 B.R. 365, 368 (Bankr.E.D.Pa. 1984) (citing *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 724–725 (Bankr.W.D.Pa.1982)); *First Int'l Services Corp. v. Econotech Services, Inc. (In re First Int'l Services Corp.)*, 47 B.R. 882, 883 (D.Conn.1983); *Nixon Machinery Co. v. Roy Energy, Inc.*, 27 B.R. 871, 873 (Bankr.E.D.Tenn. 1983). *See also* Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings*, 62 Am. Bankr.L.J. 37, 38 (1988) (citing H.R.REP. NO. 595, 95th Cong., 1st Sess. 446–447 (1977)).

(c) Judicial efficiency [47]

(d) Ability to receive a fair trial [48]

(e) The state's interest in having local controversies decided within its borders, by those familiar with its laws [49]

(f) Enforceability of any judgment rendered [50]

(g) Plaintiff's original choice of forum [51]

■■■■ Although convenience of the parties' witnesses is not explicitly included in the second prong of the § 1412 test, "convenience of the parties," by implication it is a consideration. 1 *Collier on Bankruptcy* ¶ 4.04[4][a] (15th ed. rev.1996). Furthermore, where the movant only shows that inconvenience will merely be shifted from one party to another, the court should deny the change of venue motion. *Lipshie v. AM Cable TV Indus., Inc. (In re Geauga Trenching Corp.)*, 110 B.R. 638, 654 (Bankr. E.D.N.Y.1990); *De Rosa v. C.P.P. Corp. (In re Legend Indus., Inc.)*, 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985). The factors this court deems applicable to this second prong are:

(a) Location of the plaintiff and defendant [52]

(b) Ease of access to necessary proof [53]

(c) Convenience of witnesses [54]

(d) Availability of subpoena power for the unwilling witnesses [55]

(e) Expense related to obtaining witnesses [56]

### (2) Analysis Under the "Interest of Justice" Prong

#### (a) Economics of estate administration

■■■■ One of the most important factors would appear to be the economic impact on the administration of the Debtor's estate by

47. *Thomasson v. AmSouth Bank, N.A.*, 59 B.R. 997, 1000–1001 (N.D.Ala.1986); *Twyman v. Wedlo*, 204 B.R. 1006, 1014 (Bankr.N.D.Ala.1996) (citing *In re Legend Indus., Inc.*, 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985)); *See In re Manville Forest Products Corp.*, 896 F.2d at 1391 (citing "judicial economy" as a factor under the "interest of justice" prong of § 1412). Included in "judicial efficiency" are familiarity with the substantial issues in the removed state action and familiarity with the law to be applied in the action (i.e., the "learning curve"); *Wittes v. Interco, Inc. (In re Interco)*, 139 B.R. 718, 720 (Bankr.E.D.Mo. 1992).

48. *Thomasson v. AmSouth Bank, N.A.*, 59 B.R. 997, 1000 (N.D.Ala.1986); *Twyman v. Wedlo*, 204 B.R. at 1014 (citing *In re Legend Indus., Inc.*, 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985)); *St. Johnsbury Trucking Co., Inc. v. Bankers Trust Co.*, 1994 WL 18686, *4 (Bankr.D.Vt.1994) (citing *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1391 (2d Cir.1990)); *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr. W.D.Pa.1990)).

49. *Twyman v. Wedlo*, 204 B.R. at 1014 (citing *In re Legend Indus., Inc.*, 49 B.R. 935, 938 (Bankr. E.D.N.Y.1985)); *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr.W.D.Pa.1990)); *In re Toxic Control Technologies, Inc.*, 84 B.R. 140 (Bankr.N.D.Ind.1988).

50. *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr.W.D.Pa.1990)).

51. *In re PWS Holding Corp.*, Case Nos. 98–212–SLR through 98–223–SLR (Bankr.Del. April 28, 1998) (citing prior bench decisions of the Delaware bankruptcy court).

52. *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr.W.D.Pa.1990) and *In re Allegheny, Inc.*, 68 B.R. 183, 191 (Bankr.W.D.Pa. 1986)). Location as used here refers to the parties' physical location or domicile.

53. *Thomasson v. AmSouth Bank, N.A.*, 59 B.R. at 1000; *Twyman v. Wedlo*, 204 B.R. at 1014 (citing *In re Legend Indus., Inc.*, 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985)); *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr. W.D.Pa.1990)); *In re Toxic Control Technologies, Inc.*, 84 B.R. 140 (Bankr.N.D.Ind.1988).

54. *Thomasson v. AmSouth Bank, N.A.*, 59 B.R. at 1000; *Twyman v. Wedlo*, 204 B.R. at 1014 (citing *In re Legend Indus., Inc.*, 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985)).

55. *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr.W.D.Pa.1990)); *In re Texaco, Inc.*, 89 B.R. 382, 388 (Bankr.S.D.N.Y.1988); *In re Toxic Control Technologies, Inc.*, 84 B.R. 140 (Bankr.N.D.Ind.1988).

56. *Id.*

the Delaware court if the proceeding is not transferred to Delaware, the "home court."[57] Also, this Court must consider the Delaware court's ability to efficiently administer the bankruptcy estate if a cause of action related to contractual and tortious conduct is not controlled by that court as the home court. Significantly, the Debtor failed to present any evidence that transfer of this proceeding to the Delaware court would either promote greater economy of that court's administration of the Debtor's estate or detrimentally impact that court's administration of the case. Debtor did not, for example, prove or even suggest: 1) that this litigation would delay the preparation or filing of a disclosure statement or plan of reorganization or 2) that this litigation would delay the confirmation of a Chapter 11 plan. Further, there was no evidence suggesting that the cost of litigating in Alabama as opposed to Delaware would be greater for the Debtor or that it would cause any economic hardship to the bankruptcy estate.

Also, the Debtor is facing substantial litigation unrelated to this matter—it has 377 other matters which were pending at the time the petition was filed. This Debtor and its principals are not unaccustomed to litigation. One case out of 377[58] is not likely to substantially impair the administration of a bankruptcy case involving liabilities exceeding nine hundred million dollars.[59] Plaintiffs, on the other hand, presented evidence that

there would be a substantial cost increase to them to litigate in Delaware. In addition, the Debtor's estate would incur higher attorney fees in Delaware than in Alabama to litigate this proceeding. Plus, there would be the added expense associated with bringing the Debtor's new Delaware attorneys "up to speed" on the facts of the case and on the applicable Alabama law. Thus, this Court concludes that the Debtor has not carried its burden by demonstrating any adverse financial impact on the administration of the estate if this case is not transferred.

### (b) Presumption in Favor of the Home Court

 Most of the cases that have considered this change of venue issue have created a presumption that the bankruptcy court in which the debtor's case is pending (referred to as the "home court"[60]) is the proper venue for adjudicating all proceedings in the case, including state actions removed to a bankruptcy court in which the debtor's case is not pending (referred to as the "conduit court" or "outpost court"[61]).[62] This presumption was created in the case law based upon a conclusion reached by the majority of courts considering the issue—both "home courts" and "conduit courts"—that the most important factor to consider in deciding whether to transfer the proceeding is the impact that transfer would have on the eco-

57. The "home court" is the court in which the debtor's bankruptcy case is pending. Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings*, 62 Am. Bankr.L.J. 37, 38 (1988) (citing H.R.REP. NO. 595, 95th Cong., 1st Sess. 447 (1977) and *In re Green Tie Realty Corp.*, 14 B.R. 923, 924 (Bankr.S.D.N.Y.1981)).

58. No other cases have been removed to the federal courts and no others are subject to efforts to move them to Delaware.

59. These facts suggest that this million dollar case is a drop in the bucket in the main case.

60. Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings*, 62 Am. Bankr. L.J. 37, 38 (1988) (citing H.R.REP. NO. 595, 95th Cong., 1st Sess. 447 (1977) and *In re Green Tie Realty Corp.*, 14 B.R. 923, 924 (Bankr. S.D.N.Y.1981)).

61. *Id.*

62. This is commonly referred to as "the presumption in favor of the home court." *See Bank of America, NT & SA v. Nickele*, 1998 WL 181827, *4 (E.D.Pa.1998); *Sudbury, Inc. v. Dlott* (*In re Sudbury*), 149 B.R. 489, 493 (Bankr. N.D.Ohio 1993) (citing *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc.*, 24 B.R. 141, 143 (Bankr.S.D.N.Y.1982)); *Colarusso v. Burger King Corp.*, 35 B.R. 365, 368 (Bankr.E.D.Pa. 1984) (citing *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 724–725 (Bankr.W.D.Pa.1982)); *First Int'l Services Corp. v. Econotech Services, Inc.* (*In re First Int'l Services Corp.*), 47 B.R. 882, 883 (D.Conn.1983); *Nixon Machinery Co. v. Roy Energy, Inc.*, 27 B.R. 871, 873 (Bankr.E.D.Tenn. 1983). *See also* Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings*, 62 Am. Bankr.L.J. 37, 38 (1988) (citing H.R.REP. NO. 595, 95th Cong., 1st Sess. 446–447 (1977)).

nomic and efficient administration of the estate.[63] However, the legislative history of the Bankruptcy Code reflects that Congress did not intend for bankruptcy proceedings to be heard solely by the home court. Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings,* 62 Am. Bankr. L.J. 37, 38 (1988) (citing H.R.REP. NO. 595, 95th Cong., 1st Sess. 446–447 (1977)). This intent is supported by the plain language of 28 U.S.C. § 1409 (1994), which provides that proceedings in bankruptcy may be filed (but are not required to be filed) in the district court in which the bankruptcy case is pending.

### (c) Judicial efficiency

Judicial efficiency concerns numerous issues, some of which overlap with the other factors: the home court's familiarity with the substantive issues and familiarity with the law to be applied in the proceeding (i.e., the "learning curve"); [64] the caseload of the respective courts and thus whether the time to trial is shorter or substantially longer in one forum as opposed to the other; the respective availability of the courts for resolving discovery disputes and for moving the case toward trial at a reasonable pace given the issues involved. The parties agree that Alabama law governs the proceeding and thus if the case is tried outside the Alabama courts familiarity with the applicable law will have to be achieved.

This Court is already familiar with the causes of action in this adversary proceeding as well as being familiar with many of the alleged facts as a result of having read all of the state court pleadings in preparation for the hearing on this motion and having heard the evidence at this hearing. Although no evidence was presented as to the lack of availability of the Delaware court for moving the case to trial or resolving discovery disputes, this Court is familiar with such practices and has in place scheduling conference procedures and orders, pretrial conference orders and other procedures necessary to accomplish these goals. No evidence was presented that the Delaware court has any familiarity with the progress of and issues raised in the action, and this Court assumes that there has been no reason or opportunity for that court to do so thus far. Based on the evidence presented, however, the Delaware district court is significantly less familiar than this Court with the facts of this case,

---

**63.** *Nixon Machinery Co. v. Roy Energy, Inc. (In re Nixon Machinery Co.),* 27 B.R. 871, 873 (Bankr. E.D.Tenn.1983) (citing numerous cases not mentioned below for the conclusion that the most important factor in determining a change of venue request is whether the economic and efficient administration of the estate is furthered by the transfer); *See Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.),* 896 F.2d 1384, 1391 (2d Cir.1990) (home court concluding that although plaintiff showed that convenience of the parties was promoted by transfer of removed state action to conduit court, lack of proof regarding "efficient administration (of the estate) would cut against transferring venue" to the conduit court); *Continental Airlines, Inc. v. Chrysler (In re Continental Airlines, Inc.),* 133 B.R. 585, 587–588 (Bankr.D.Del.1991) (concluding that defendants in the state action failed to overcome the presumption in favor of the home court adjudicating the proceeding in bankruptcy because defendant failed to present sufficient evidence that the economics of estate administration would be enhanced by transferring the state action to an outpost court where defendant's witnesses and records were located); *(Milligan v. Hetra Computer Communication Indus., Inc. (In re JWP, Inc.),* 1994 Bankr.Lexis 1144, 8 Fla. Law W.

Fed. B 129 (Bankr.M.D.Fla.1994)) (holding that the state action which defendant-debtor removed to the conduit court would be transferred to the home court because debtor had proven that economic and efficient administration of the estate would be promoted in the home court which was presumptively the proper venue for adjudicating the proceeding, where the state action being transferred was one of several related actions pending against debtor and none of the parties resided in the conduit court's jurisdiction); *Sudbury, Inc. v. Dlott (In re Sudbury),* 149 B.R. 489, 493–494 (Bankr.N.D.Ohio 1993) (concluding that defendants in the state action removed by plaintiff/debtor to the home court failed to overcome the presumption in favor of the home court adjudicating the state action as a proceeding in bankruptcy because defendant failed to present sufficient evidence that economic and efficient administration of the estate would be enhanced by transferring the state action to an outpost court where defendant's witnesses and records were located); *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.),* 24 B.R. 141, 143 (Bankr.S.D.N.Y.1982) (concluding same under a set of facts nearly identical to those in *Sudbury* ).

**64.** *Supra* footnote 49.

law to be applied in and the progress of this proceeding.

Additionally, as one other bankruptcy court has noted,[65] judicial efficiency may also include consideration of the likelihood of a resolution short of trial. If the litigation remains in Alabama and the depositions and trial preparation continue in Alabama where the transaction giving rise to the action occurred and where most of the principals of the parties are located, there is a stronger possibility or greater "opportunity for resolution." *Twyman v. Wedlo*, 204 B.R. 1006, 1015 (Bankr.N.D.Ala.1996). Thus, on this factor Debtor and the non-debtor Defendants have failed to show that transfer to Delaware would be appropriate.

### (d) Ability to receive a fair trial

This factor might be crucial if a court had a predisposition to rule in favor of one party or another or if there was concern about getting an impartial jury. Counsel for all parties agree this is not an issue in this case.[66] Further, no evidence was presented indicating that the Delaware court or a Delaware jury would be more impartial in trying the action than an Alabama court and an Alabama jury. Therefore, the Court concludes that this factor does not weigh in favor of the transfer or against the transfer and that the parties are capable of receiving a fair trial in either Court.

### (e) The state's interest in having local controversies decided within its borders, by those familiar with its laws

Plaintiffs presented evidence that the events which gave rise to the Plaintiffs' cause

of action occurred in Alabama and the parties agree that Alabama law is controlling. Thus, the courts of this state would prefer to interpret the laws of the state of Alabama rather than a court in another state. Also, it seems more appropriate for Alabama citizens familiar with transactions and /or practices in the region to constitute the jury panel as opposed to citizens in another part of the country. Therefore, the evidence with respect to this factor weighs in favor of not transferring the proceeding.

### (f) Enforceability of any judgment rendered

At the hearing on closing arguments counsel for all parties indicated this is really not an issue as it might be in other litigation. If a judgment is obtained against the Debtor, a claim will be filed. But if a judgment is obtained against the non-debtor Defendants, the location of the litigation will not prejudice the collection thereof.

### (g) Plaintiffs' Original Choice of Forum

The district court in the Bruno's case noted that where the venue of a bankruptcy case is proper, then "a debtor's /plaintiff's choice of forum is to be accorded substantial weight and deference." *In re PWS Holding Corp.*, Case Nos. 98–212–SLR through 98–223–SLR (Bankr.Del. April 28, 1998). This Court agrees with that analysis and further believes it is just as applicable to applying § 1412 to proceedings as in applying § 1412 to cases.[67] Judge Robinson then

---

**65.** *Twyman v. Wedlo*, 204 B.R. 1006, 1015 (Bankr.N.D.Ala.1996).

**66.** This Court finds it conceivable that even if one party felt that an unfair trial was a possibility, it would be difficult to raise this issue and argue it without offending either this Court or the proposed transferee court.

**67.** The factors typically cited by courts in determining whether to transfer venue of a bankruptcy case are the following six factors developed by the Fifth Circuit Court of Appeals in *Puerto Rico v. Commonwealth Oil Refining Co., Inc.* (*Matter of Commonwealth Oil Refining Co., Inc.*), 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980): (1) The proximity of creditors of every kind to the Court; (2) The proximity of the bankruptcy (debtor) to the Court; (3) The proximity of the witnesses necessary to the administration of

the estate; (4) The location of the assets; (5) The economic administration of the estate; (6) The necessity for ancillary administration if bankruptcy (liquidation) should result.
This Court would be bound to follow the Fifth Circuit's analysis as precedent if this motion to transfer venue concerned the Debtor's entire case. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir.1981). *See* 1 *Collier on Bankruptcy* ¶ 4.04[4][a][ii] (15th ed. rev.1996). The four factors cited by the Delaware court regarding change of venue for a bankruptcy case are: (1) The proximity of the court to interested parties; (2) the location of the debtor's assets; (3) The efficient and economic administration of the estate; and (4) The relative economic harm to the debtor and other interested parties. *In re PWS Holding Corp.*, Case Nos. 98–212–SLR through 98–223–SLR (Bankr.Del. April 28, 1998) (citing prior bench decisions of the Delaware bankruptcy court).

goes on to point out that this reading of § 1412 requires the movant to prove the necessity of the transfer. By placing this factor last under the interest of justice analysis, this Court believes that this factor determines the outcome under this prong: if the movant has not proved by a preponderance of the evidence that the preceding factors weigh in favor of the transfer, then plaintiff's choice of forum remains the proper venue. Thus, no change of venue is appropriate in this matter because Movant has not convinced this Court under any of the preceding factors that "a transfer is necessary to achieve the statutory purposes." *In re PWS Holding Corp.*, Case Nos. 98–212–SLR through 98–223–SLR (Bankr.Del. April 28, 1998).

This Court finds that Defendants have only prevailed on one factor in the interest of justice prong: the presumption in favor of the home court. But this factor and presumption are rebutted and defeated when all of the other factors are weighed. The Court concludes that Defendants have failed to meet their burden of proof under the interest of justice prong of § 1412 for transferring venue of the adversary proceeding to the Delaware court. The evidence in the record does not support a finding that transfer is warranted under any of the applicable factors constituting the interest of justice. The table on the following page provides a summary of these factors and those findings of fact relevant to each factor as previously discussed.

| Interest of Justice | |
|---|---|
| **Factor** | **Relevant Facts** |
| (a) Economics of estate administration | (1) No evidence of adverse or detrimental effect on the estate of liquidating the cause of action in Alabama;<br>(2) No evidence of increased potential cost to Debtor's estate for Debtor's employees /officers to litigate in Alabama;<br>(3) Higher cost of defense in Delaware;<br>(4) Added expense to estate for Delaware attorneys to become familiar with the case and Alabama law;<br>(5) This action is one of 378 actions in which Debtor was a party pending at the commencement of Debtor's Ch. 11 case and appears to be unrelated to the other 377. |
| (b) Presumption in favor of the home court | The presumption is in favor of the Delaware court. |
| (c) Judicial efficiency | (1) Alabama law applies;<br>(2) This Court is more familiar with Alabama law and with the substantive issues;<br>(3) This Court is available and able to resolve discovery disputes and move the proceeding toward trial. |
| (d) Ability to receive a fair trial | Not an issue in this case. |
| (e) The state's interest in having local controversies decided within its borders, by those familiar with its laws | (1) Courts of Alabama would prefer interpreting Alabama law;<br><br>(2) The events giving rise to the cause of action allegedly occurred in Alabama;<br>(3) Alabama citizens should comprise the jury in a trial of this proceeding. |

| Interest of Justice | |
|---|---|
| **Factor** | **Relevant Facts** |
| (f) Enforceability of any judgment rendered | Not an issue in this case. |
| (g) Plaintiffs' choice of forum | (1) Movants have not convinced this Court that transfer is necessary; (2) Plaintiffs' original action was filed in Alabama. |

### (3) Analysis Under the "Convenience of the Parties" Prong

██ Under the alternative prong for proving change of venue, convenience of the parties, the Court will analyze the facts presented by the parties in relation to the following factors:

### (a) Location of Plaintiff and Defendant

██ Location of the plaintiff and defendant refers to the physical location of the parties, rather than their state of incorporation.[68] The facts relevant to this factor reflect that the principal offices of Plaintiffs and the Debtor are in Birmingham, Alabama, and that there is no evidence to suggest that any party to this action maintains offices in Delaware. In fact, based on the evidence, the only other state in which the three non-debtor Defendants maintain principal offices is New York. Therefore, it appears that between Alabama and Delaware, Alabama is the most appropriate venue when considering the location of all of the parties to this adversary proceeding.[69]

### (b) Ease of access to necessary proof

The evidence shows that most of the material witnesses, the contracts which form the basis of this action, the real estate which was the subject of the contracts, and documents produced prepetition are located in or near Birmingham, Alabama. The parties' potential witness lists reflect no witnesses located in Delaware. Further, any additional documents to be produced are likely to be located in Alabama or New York. Thus, none of the material or necessary proof for this action appears to be located in Delaware.

### (c) Convenience of witnesses

Debtor has offered to make available as witnesses for trial in Delaware all of its employees who are subject to the subpoena power of the Circuit Court of Jefferson County, thus they argue, making it convenient for Plaintiffs to call them as witnesses. Nevertheless, if this adversary proceeding were transferred to Delaware, there would be substantial cost associated with the appearance of virtually all of the material witnesses in Delaware; further, witnesses would be inconvenienced by the travel to Delaware without access to direct airplane flights, change in time zone, and in some cases having to stay one or more nights away from their homes, families and jobs. Additionally, Plaintiffs will have their own witnesses who will incur travel, lodging and food expenses, and the same inconvenience of no direct flights to Delaware, change in time zone, and the possibility of one or more nights away from their homes, families and jobs if the proceeding is transferred. Clearly, the facts relevant to this factor weigh against transfer of the adversary proceeding.

### (d) Availability of subpoena power for unwilling witnesses

As mentioned above, Debtor has agreed to make available any witnesses that are its employees at the time of trial who would be subject to the subpoena power of the Circuit Court of Jefferson County should this action be transferred to Delaware. However, if some of the witnesses are former employees of Debtor and reside in Alabama, they would not be subject to the subpoena power of the Delaware court as they would for this Court and the Debtor could not make them available. Thus, the evidence regarding this fac-

---

**68.** *Supra* footnote 50 and the cases sited therein.

**69.** See the chart *infra,* pages 331–332.

tor appears to weigh against transfer of this proceeding.

### (e) Expenses related to obtaining witnesses

The majority of potential witnesses on the parties' preliminary trial witness lists are located in Birmingham, Alabama. Twenty-two of Plaintiffs' twenty-seven potential witnesses and nine of Debtor's fourteen potential witnesses are located in Birmingham. Of the remaining ten potential witnesses, as many as eight may be located outside of Alabama, but not in Delaware.

In summary, none of the parties are physically located in Delaware. Much of the proof necessary for trial has been produced from Birmingham or is available in Birmingham, most of the witnesses are available in Birmingham, there will be substantial cost in producing live witnesses from Birmingham in Delaware for trial. Thus, the Defendants have failed to prove by a preponderance of the evidence that this adversary proceeding should be transferred to Delaware for the convenience of the parties.

The table on the following page provides a summary of these factors and those findings of fact relevant to each factor.

| Convenience of the Parties | |
|---|---|
| **Factor** | **Relevant Facts** |
| (a) Location of the plaintiffs and defendants | (1) SNA is an Alabama corporation, its principal offices are in Birmingham, Alabama, and no offices in Delaware; (2) A.B. is a Delaware corporation, its principal offices are in Birmingham, Alabama, and no offices in Delaware; (3) Debtor is an Alabama corporation, its principal offices are in Birmingham, Alabama, and no offices in Delaware; (4) KKR is a Delaware corporation and its principal offices are in New York; (5) All other non-debtor Defendants have principal offices in New York. |
| (b) Ease of access to necessary proof | (1) Most of the parties' potential witnesses to be deposed and to testify are located in Birmingham, Alabama; (2) Those records still required to be produced by Debtor are located in Birmingham, Alabama; (3) The subject contracts were negotiated in Birmingham, Alabama; (4) KKR has already produced 5,000–6,000 documents and forwarded them to Plaintiffs in Birmingham; (5) Any records which Plaintiffs may need to produce for Debtor and other defendants are likely located in Birmingham, Alabama; (6) The two store sites SNA leased to Debtor under the subject contract are located in Birmingham, Alabama; (7) Five of the nine store sites Debtor allegedly agreed to offer to sell to SNA in the amended contract are located in Alabama. |
| (c) Convenience of witnesses | (1) Costs of travel, lodging, and food for the witnesses who will testify; (2) Inconvenience to witnesses because of lack of direct flights, the time change, and the likelihood of overnight stays. |

| Convenience of the Parties | |
| --- | --- |
| **Factor** | **Relevant Facts** |
| (d) Availability of subpoena power for unwilling witnesses | Debtor has agreed to make all employees at the time of trial available in Delaware, but some witnesses may be former employees not subject to the Delaware court's subpoena power. |
| (e) Expense related to obtaining witnesses | (1) Thirty-one of the parties' forty-one potential witnesses are located in Birmingham, Alabama;<br>(2) No potential witnesses are in Delaware, although at most eight of the ten not in Birmingham are located outside of Alabama. |

### *(F) Conclusion*

In deciding this matter the Court agrees that § 1412 requires "[c]onsiderations as lofty as 'justice' and as mundane as 'convenience' must be weighed by the court in determining whether the balance of interests strongly favors transfer." *In re PWS Holding Corp.*, Case Nos. 98–212–SLR through 98–223–SLR (Bankr.Del. April 28, 1998). Having weighed all of the factors, the Court finds that except for the judicially created presumption in favor of the home court, there are no facts or circumstances in favor of transferring this proceeding either in the interest of justice or the convenience of the parties. To the contrary, there is substantial and convincing evidence to not only rebut the presumption but to dictate that the transfer request be denied. In fact, the lack of any evidence demonstrating economic hardship, adverse impact, or detrimental effect on the administration of the bankruptcy estate is a significant and overwhelming factor. In considering and analyzing this factor in conjunction with the others discussed, the Court concludes that Debtor has failed to meet its burden of proof under the interest of justice prong of § 1412 for transferring venue of the adversary proceeding to the Delaware district court. Further, Debtor has failed to prove by a preponderance of the evidence that this adversary proceeding should be transferred to Delaware for the convenience of the parties. Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the relief sought by the Debtor, Bruno's, Inc., and the non-debtor Defendants is **DENIED** with respect to transfer of this adversary proceeding to the Delaware bankruptcy court where Debtor's Chapter 11 case is pending.