In the Matter of CONTINENTAL AIRLINES, INC., Debtor.

**EAGLE INDUSTRIAL TRUCK MANUFACTURING, INCORPORATED, Plaintiff,**

v.

**CONTINENTAL AIRLINES, INC., Defendant.**

Bankruptcy No. 90–932.
Adv. No. 91–8.

United States Bankruptcy Court, D. Delaware.

April 1, 1991.

Jeffrey S. Goddess, Wilmington, Del., for plaintiff.

Peter J. Walsh, Wilmington, Del., for Unsecured Creditors Committee.

William D. Johnston, Wilmington, Del., for debtor/defendant.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

This reclamation action concerns three tow tractors used to haul cargo to and from aircraft which were delivered to the Debtor, Continental Airlines, Inc. (Continental) approximately a week before its Chapter 11 filing. The Plaintiff, Eagle Industrial Truck Manufacturing, Inc. (Eagle), seeks to physically reclaim the equipment or, alternatively, to obtain an administrative claim or a lien in the vehicles for $86,055 under U.C.C. § 2–702 and § 546(c) of title 11, United States Code. The Defendant Continental contends that Eagle has not established a *prima facie* reclamation case and, even assuming that a reclamation case has been made, that relief should be limited to an administrative claim under 11 U.S.C. § 546(c)(2)(A). This court has jurisdiction under 28 U.S.C. § 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (E).

The trial record shows that Eagle shipped one Ford Eagle F6000 tow tractor to Continental's Houston hub and two Ford F6000 Eagle Bobtail tractors to Continental's Newark hub on November 23, 1990. The purchase price of this equipment as reflected in the purchase orders and invoices indicates a price of $57,370 for the two Bobtail tractors and $28,685 for the tow tractor; therefore, an aggregate amount of $86,055 was owed by Continental to Eagle. Continental received the goods on November 25 and November 26 in Newark and Houston, respectively. Continental filed a bankruptcy petition on December 3, 1990. Eagle's president, Dennis Morrow, learned of the filing that same day and immediately sent a written demand for physical reclamation to the debtor. Continental refused to tender over the tow trucks even though Eagle still retains legal title to the motor vehicles under Michigan law. Subsequently, Eagle instituted this action against Continental to recover the tow trucks. At trial, Continental produced evidence that the tow trucks were integral to Continental's freight operations at the Houston and Newark airports due to the trucks' unusual power which enables each to pull several dollies of cargo.

*Discussion*

The parties do not dispute that the Plaintiff Eagle is a seller that has satisfied the

requirements of § 546(c)(1) as to delivery and written demand for reclamation. The issues are whether Eagle has shown that Continental was insolvent when it received delivery of the equipment and, if so, what kind of relief it is entitled to under subsection (c)(2) of § 546.

■ Reclamation under U.C.C. § 2–702 and 11 U.S.C. § 546(c) requires a reclaiming seller to prove four elements: (1) the debtor was insolvent when the goods were delivered; (2) a written demand was made within ten days after delivery; (3) the goods were identifiable at the time of demand; and (4) the goods were in possession of the debtor at the time of demand. *In re Braniff, Inc.*, 113 B.R. 745, 751 (Bankr.M. D.Fla.1990). Continental argues that the Plaintiff has failed to prove insolvency and, consequently, has not established a *prima facie* case for reclamation under U.C.C. § 2–702 or 11 U.S.C. § 546(c).

Under the Bankruptcy Code, a corporation is insolvent if its liabilities are greater than its assets, exclusive of property fraudulently transferred. 11 U.S.C. § 101(31)(A). This is essentially a "balance sheet" test of insolvency. Frequently, ascertaining insolvency is at best an inexact science and may, in some situations, be close to impossible as a practical matter. Yet, creditors still may access this type of financial information pursuant to examinations under Bankruptcy Rule 2004 and, in adversary proceedings such as here, under the discovery and compulsory process procedures allowed under the Rules. Eagle's sole evidence as to insolvency is a pleading by Continental in an unrelated and separate reclamation action wherein it admitted "that within at least ten (10) days prior to Continental's filing of a voluntary petition under Chapter 11, Continental was insolvent." (Paragraph 7 of the Answer in *Anheuser–Busch Companies, et al. v. Continental Airlines, Inc.*, Adversary No. 90–110).

■ Despite the Answer in the present proceeding which expressly denies that the Debtor was insolvent within ten days of filing its petition, the pleading from the other adversary suit is admissible evidence against the pleader in this action. *Slate Printing Co. v. Metro Envelope Co.*, 532 F.Supp. 431, 436 (N.D.Ill.1982); *see also* 29 Am.Jur.2d *Evidence* §§ 695–697 (2d ed. 1967); Cleary; *McCormick on Evidence* § 265 (3d ed. 1984). In this Circuit, a statement made by a party in connection with other litigation that is adverse to or inconsistent with its position in a pending proceeding is admissible as an evidentiary admission in the pending suit. *See Fidelity & Deposit Co. of Md. v. Hudson United Bank*, 653 F.2d 766, 777 (3d Cir.1981). The evidence is not conclusive but may be rebutted, and it must be weighed along with all other evidence by the trier of fact. *Id.* One can reasonably infer from the *Anheuser–Busch* pleading that Continental was insolvent during the entire ten days prior to Continental's bankruptcy filing. As a result, Eagle has made a bare showing of the insolvency element by Continental's admission, and the burden of proof shifts to Continental to rebut Eagle's evidence. Since Continental has not presented any evidence refuting Eagle's proof, the court finds that the Debtor was insolvent when it received the goods.

■ Turning to the issue of the appropriate remedy under 11 U.S.C. § 546(c)(2), the court notes that this provision limits a reclaiming seller's remedy by allowing the court to afford alternate relief in the form of an administrative claim or a post-petition lien. Thus, granting the relief of physical reclamation is discretionary. The court, in deciding reclamation cases, should strike a balance between the Debtor's need for the goods in order to continue its ongoing business operations, and seller's interest in the goods' value. *In re Flagstaff Foodservice Corp.*, 14 B.R. 462, 468 (Bankr.S.D.N.Y. 1981). Having established a *prima facie* case for reclamation, Eagle also presented evidence of its financial hardship revealing its immediate need for cash by reselling the equipment; however, such evidence is not relevant to the actual "balancing" test to determine what remedy is appropriate under § 546(c). Rather, the court must weigh the debtor's need for the goods in light of the Code's policy encouraging companies to

reorganize against the seller's rights under state law to physically reclaim the goods. *In re Coupon Carriers Co.*, 77 B.R. 650, 652 (N.D.Ill.1987). The debtor's employees at its Houston and Newark facilities testified that the tow trucks are absolutely essential for transporting air cargo and that using other types of tow trucks would be inadequate to move the required quantity of cargo. Moreover, the testimony revealed that leasing these special tow trucks from other sources was presently impossible due to Continental's current Chapter 11 status. On the other side of the scales, Eagle has title to the equipment and wants to physically reclaim the vehicles so that they can be resold. Overall, the necessity of the equipment to Continental's reorganization outweighs Eagle's need to sell the used equipment for cash. Therefore, the court will grant Eagle an administrative claim under 11 U.S.C. § 546(c)(2)(A) in the amount of $86,055 against the debtor's estate.