**IN RE: REICHOLD HOLDINGS US, INC., et al., Debtors**

**Case No. 14-12237 (MFW)**
**Jointly Administered**

United States Bankruptcy Court,
D. Delaware.

Signed August 24, 2016

Nicholas J. Brannick, David William Giattino, Norman L. Pernick, Marion M. Quirk, Cole Schotz P.C., Wilmington, DE, David M. Kohane, Stuart Komrower, Cole Schotz Meisel Forman & Leonard, P.A., Hackensack, NJ, for Debtors.

Josef W. Mintz, Blank Rome, LLP, Wilmington, DE, for Trustee/Creditor Committee.

Mark S. Kenney, Office of the U.S. Trustee, Wilmington, DE, for U.S. Trustee.

Therese Anne Scheuer, Cole Schotz P.C., Wilmington, DE, for Debtor/Claims Agent.

Bonnie Glantz Fatell, Blank Rome LLP, Wilmington, DE, Janine M. Figueiredo, Mark S. Indelicato, Mark T. Power, Lauren S. Schlussel, Hahn & Hessen LLP, New York, NY, Michael B. Schaedle, Blank Rome LLP, Philadelphia, PA, for Creditor Committee.

### MEMORANDUM OPINION [1]

Mary F. Walrath, United States Bankruptcy Judge

Before the Court is a limited Objection filed by the liquidating trustee (the "Trustee") of Reichhold Holdings US, Inc. (the

---

1. This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

"Debtor") to an administrative claim for its reclamation rights under section 546(c) filed by Covestro LLC ("Covestro"). For the reasons set forth below, the Trustee's Objection will be overruled.

## I. BACKGROUND

The Debtor filed a chapter 11 bankruptcy petition on September 30, 2014. (D.I. 1.) At the time of the filing, the Debtor was a borrower under a prepetition credit facility (the "Prepetition Loan") with Oaktree Capital Management, L.P. (the "Prepetition Lender"). In connection with the Prepetition Loan, the Debtor entered into a security agreement that granted the Prepetition Lender a lien in substantially all of the Debtor's assets, including inventory.

On October 2, 2014, the Court entered an Interim Order authorizing the Debtor to obtain post-petition financing (the "DIP Loan") from a group of lenders (the "DIP Lenders"). The Interim Order authorized the Debtor to repay the Prepetition Loan in full from proceeds of the DIP Loan. (D.I. 54 at p. 9.) The DIP Loan was secured by a first priority lien on all prepetition and postpetition property of the Debtor's estate, including inventory. (D.I. 54.) The first priority lien, however, did not attach to property that was "subject to valid, perfected and non-avoidable liens (or to valid liens in existence as of the Petition Date that are subsequently perfected as permitted by section 546(b) of the Bankruptcy Code." (Id. at p. 21.) The DIP Loan was subsequently repaid from the sale of the Debtor's assets on September 15, 2015. (D.I. 1042.) On January 13, 2016, the Court confirmed the Debtor's plan of liquidation. (D.I. 1385.)

Within days of the bankruptcy filing (on October 3, 2014), Covestro delivered a written reclamation demand to the Debtor. (See POC 4905, Ex. A.) On December 24, 2014, Covestro filed a proof of claim in the amount of $965,248.14. (See POC 167.) Thereafter, Covestro and the Debtor entered into a critical vendor agreement, pursuant to which the Debtor agreed to make certain payments to Covestro. In turn, Covestro agreed to amend its proof of claim after each payment to reflect the reduction in the net amount owed. Pursuant to that agreement, Covestro amended its proof of claim twice. The two payments made by the Debtor satisfied the section 503(b)(9) portion of Covestro's claim (for goods delivered within 20 days of the petition date) but did not pay its claim in full.

On October 1, 2015, Covestro filed a proof of claim (the "Reclamation Claim") seeking $411,781.72 as an administrative expense. The Reclamation Claim sought the value of goods delivered to the Debtor between 21 and 45 days prior to the commencement of the Debtor's bankruptcy case. The Debtor filed a limited objection to the Reclamation Claim on May 26, 2016, on the ground that the Reclamation Claim was rendered valueless when the Prepetition Loan was repaid. (D.I. 1563). Covestro responded to the objection on June 9, 2016, and the Court heard oral argument on June 27, 2016. (D.I. 1569). The matter is now ripe for decision.

## II. JURISDICTION

The Court has subject matter jurisdiction over this contested matter. 28 U.S.C. §§ 1334(b) & 157(b)(1). The Court may enter a final order in proceedings concerning claim allowance. Stern v. Marshall, 564 U.S. 462, 131 S.Ct. 2594, 2611, 180 L.Ed.2d 475 (2011).

## III. DISCUSSION

### A. Legal Standard

Section 546(c) recognizes a vendor's right of reclamation for goods sold to a debtor. It provides

that subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof ... a seller of goods that has sold goods to the debtor in the ordinary course of such seller's business [has the right] to reclaim such goods if the debtor has received [them] while insolvent within 45 days before the commencement of a case under this title.

11 U.S.C. § 546(c). Section 546(c) does not create an independent right of reclamation; rather, it permits an exception to the trustee's strong arm powers if the seller has a right of reclamation under state law. Allegiance Healthcare Corp. v. Primary Health Sys. (In re Primary Health Sys., Inc.), 258 B.R. 111, 114 (Bankr.D.Del.2001) (citations omitted). In order to prevail, a reclaiming seller must be able to prove that it had a valid right of reclamation under state law. Circuit City Stores, Inc., 441 B.R. 496, 505 (Bankr.E.D.Va.2010) (citation omitted).

■ A seller seeking reclamation under section 2–702 of the Uniform Commercial Code ("UCC") and Bankruptcy Code section 546(c) must prove four elements: (1) the debtor was insolvent when the goods were delivered; (2) a written demand was made not later than 45 days of the debtor's receipt of such goods, or not later than 20 days following the petition date if the 45-day period expires post-petition; (3) the goods were identifiable at the time of demand; and (4) the goods were in possession of the debtor at the time of demand. In re Hechinger Inv. Co. of Delaware, Inc., 274 B.R. 402, 405 (Bankr.D.Del.2001) (citations omitted).

■ The UCC, as adopted in Pennsylvania,[2] provides that "[w]here a seller discovers that a buyer has received goods on credit while insolvent he may reclaim the

goods." 13 Pa. Stat. and Cons. Stat. Ann. § 2702(2). A seller's right to reclaim is subject to the rights of a buyer in the ordinary course of business or other good faith purchaser. 13 Pa. Stat. and Cons. Stat. Ann. § 2702(3). However, the mere presence of a secured creditor with superior rights under UCC section 2-702(3) does not extinguish a vendor's reclamation rights. In re Pester Ref. Co., 964 F.2d 842, 846 (8th Cir.1992); United States v. Westside Bank, 732 F.2d 1258 (5th Cir.1984).

B. Prior Rights

■ The Trustee contends that the DIP Lenders' rights, though granted after Covestro's reclamation rights arose, relate back to the Prepetition Lender's rights because the DIP Loan repaid the Prepetition Loan. Therefore, the Trustee contends that the two liens should be viewed as an "integrated transaction." In re Dana Corp. 367 B.R. 409, 420 (Bankr.S.D.N.Y.2007) (quoting In re Dairy Mart Convenience Stores, Inc., 302 B.R. 128 (Bankr.S.D.N.Y. 2003)). Based on the theory that the goods were used to repay the Prepetition Lender, the Trustee further contends that Covestro's rights were extinguished when the Debtor repaid the Prepetition Loan because reclamation permits a seller to reclaim only the goods themselves. Circuit City, 441 B.R. at 510–11.

Covestro responds that its reclamation rights are not subject to the DIP Lenders' rights because the DIP Lenders' floating lien was distinct and separate from the Prepetition Lender's lien, and arose after Covestro's rights arose.

The Trustee's position is supported by the Dairy Mart and Dana Corp. decisions by the Bankruptcy Court for the Southern District of New York. In Dairy Mart, the Court held that where a prepetition se-

2. Pennsylvania law governs the instant dispute. (See POC 4905, Ex. B at 4.)

cured lender had a floating lien on inventory and was paid from the proceeds of a post-petition loan supported by a new floating lien, the goods securing the prepetition lender's debt were effectively used to repay that debt.

> Thus, at the time that [the prepetition secured lender's] secured claim was paid on October 31, 2001, all of the goods or proceeds of those goods were disposed of to "pay" [the prepetition secured lender's] secured claim. In this context, the reclamation goods or the proceeds from those goods have been used to satisfy the secured creditor's claim. As such the goods or their proceeds have effectively been "paid" to the secured creditor, and the Reclamation Claims in those goods is valued at zero.

Dairy Mart, 302 B.R. at 136. Although the post-petition lien was granted after the reclamation rights arose, the Dairy Mart Court related it back to the prepetition lien, finding both liens were an "integrated transaction." Id. at 135.

Adopting the reasoning in Dairy Mart, the court in Dana Corp. reached the same conclusion.[3] The Dana Corp. Court reasoned that since the lien chain between prepetition and DIP lenders remained unbroken, the DIP lender's rights should relate back to the prepetition lender's rights. Dana Corp., 367 B.R. at 421 ("Because the reclaimed goods or the proceeds thereof were either liquidated in satisfaction of the Prepetition Indebtedness or pledged to the DIP Lenders pursuant to the DIP Facility, the reclaimed goods effectively were disposed of as part of the March 2006 repayment of the Prepetition Credit Facility."). As a result, the Dana Corp. Court held that the reclamation claims were valueless. Id. at 421.

Covestro's position is supported by In re Phar–Mor, 301 B.R. 482, 498 (Bankr. N.D.Ohio 2003), aff'd 534 F.3d 502, 506–07 (6th Cir.2008). In Phar-Mor, the Bankruptcy Court held that a postpetition lender's floating lien on the debtor's inventory did not constitute an assumption of the prepetition creditor's lien, but an entirely new lien that did not defeat an intervening reclaiming seller's rights. Id. at 498 ("[A] debtor's decision to grant a security interest in inventory to a subsequent secured lender cannot defeat a seller's reclamation rights."). The Sixth Circuit affirmed the bankruptcy court's holding in Phar–Mor, explicitly rejecting the Dana Corp. and Dairy Mart holdings. Phar–Mor, 534 F.3d at 506–07.

■ The Court respectfully disagrees with Dairy Mart and Dana Corp. and agrees with the Phar–Mor decision. The function of a lien is to secure a debt; once that debt is repaid, the lien and the rights of the lien-holder terminate. See Unisys Fin. Corp. v. Resolution Trust Corp., 979 F.2d 609, 611 (7th Cir.1992) ("A lien is parasitic on a claim. If the claim disappears—poof! the lien is gone."). In this case, when the Prepetition Loan was paid from the DIP Loan, the Prepetition Lender's lien was satisfied but Covestro's reclamation rights remained in force. The fact that funds obtained from the DIP Loan were used to satisfy the Prepetition Loan, or that the Debtor granted the DIP Lenders a lien in inventory to obtain such funds, is irrelevant. Covestro's reclamation rights arose before the DIP Lenders' security interest attached, and the DIP Lenders' lien was expressly subject to reclamation rights under section 546. (See D.I. 54 at p. 21.)

---

**3.** A previous version of section 546(c) was in effect when Dairy Mart was decided. See 11 U.S.C. 546(c) (2003). However, the court in Dana Corp. found that the Dairy Mart holding was equally applicable to amended section 546(c).

The Court agrees with Dairy Mart's observation that a prepetition lender could elect to foreclose on its collateral, and should it do so, would likely defeat a vendor's reclamation rights. Dairy Mart, 302 B.R. at 135. This conclusion is compelled by statute: a reclaiming seller's rights are subject to the prior rights of a secured lender. Foreclosure is among those rights. See 13 Pa. Stat. and Cons. Stat. Ann. § 9601 (upon default, "a secured party may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, ... by any available judicial procedure").

However, the Court thinks it is too much of a stretch to conclude, as the Dairy Mart and Dana Corp. Courts did, that the repayment of the Prepetition Loan from the DIP Loan was repayment from the "sale" of the reclaiming creditor's goods. In fact, Covestro's goods were not sold and their proceeds were not paid to the Prepetition Lender. The Prepetition Lender was paid from the proceeds of the DIP Loan and the reclaimed goods were merely pledged to secure that loan. Nor can the Court find that the DIP Loan and the Prepetition Loan are an "integrated transaction." They were two different loans by two different lenders at two different times. Because Covestro's rights arose before the DIP Lenders had any rights in the goods, the Court concludes that the DIP Lenders do not have prior rights in the goods under section 546(c).[4]

The Court finds the Trustee's reliance on other cases likewise misplaced. In Primary Health, the Court held that "a credi-tor with a prior perfected security interest in inventory which contains an after-acquired property clause is a good faith purchaser under the UCC." Primary Health, 258 B.R. at 114 (citations omitted) (emphasis supplied). The Primary Health holding did not deal with the rights of a reclaiming seller against a secured lender with a subsequently perfected security interest as here.

In Advanced Marketing, the Court considered the scope of reclamation rights when a pre-petition secured claim that encumbered all of the debtor's assets remained unpaid. Simon & Schuster, Inc. v. Advanced Mktg. Servs. (In re Advanced Mktg. Servs.), 360 B.R. 421, 427 (Bankr. D.Del.2007) ("Although the Senior Facility may be satisfied at some future date, [the reclaiming seller] has failed to establish when that will occur and, more importantly, whether any of the Goods subject to its reclamation claim will still be in the Debtors' possession at that time."). In the instant dispute, the Prepetition Loan was fully paid with funds from the DIP Loan on the second day of the case. Consequently, the holding in Advanced Marketing is not applicable.

## IV. CONCLUSION

For the foregoing reasons, the Court will overrule the Trustee's limited Objection to the Reclamation Claim.[5]

An appropriate Order follows.

---

4. The Court also finds the Trustee's reliance on Circuit City unpersuasive. In Circuit City, the court denied a reclamation claim because the seller did not diligently pursue its claim. Circuit City, 441 B.R. at 508 ("Respondents [sic] failure to diligently pursue their Reclamation Claims warrants denial of their Reclamation Claims as a matter of law."). While the Court expressed agreement with the Dana Corp. decision, that portion of the opinion was not relevant to the Court's holding that the reclaiming sellers did not act diligently in pursuing their claims, and was, therefore, mere dicta. Id. at 509–11.

5. The Court's ruling only deals with the Trustee's limited objection. The Trustee reserved

all rights to object to the Reclamation Claim on other grounds. Therefore, the Court makes no findings whether the Reclamation Claim satisfies the other requirements of section 546(c) and state law.

